# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 04-1191 & 04-1302

TONI K. CLAIBORNE,

*Plaintiff-Appellant,*

v.

ROY WISDOM, GEORGE MITCHELL MOTT,
DRAKE TERRACE APARTMENTS, **and**
PURITAN HOME FUNDING, L.P.,

*Defendants-Appellees,*

LEE, COSSELL, KUEHN & LOVE, L.L.P.,

*Intervenor-Appellant,*

ELAINE P. BOYD,

*Appellant.*

_____

Appeals from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. IP 01-1234-C-Y/F—**Richard L. Young**, *Judge.*

_____

ARGUED SEPTEMBER 14, 2004—DECIDED JULY 7, 2005

_____

Before EASTERBROOK, MANION, and WOOD, *Circuit
Judges.*

WOOD, *Circuit Judge.* In the words of the district court
judge, "This case has a long and tortured history." At root,
it was once a suit based on federal and state laws guaran-

teeing various rights to fair housing. At this point, however, all that is before us is the district court's order requiring the plaintiff, her individual lawyer, and the law firm that represented her to pay the defendants' attorneys' fees and costs. We conclude that the district court acted lawfully and within its discretion when it entered this order against the plaintiff herself, Toni K. Claiborne, and against the plaintiff's lawyer, Elaine P. Boyd, but that the court should not have taken this action directly against the law firm of Lee, Cossell, Kuehn & Love, L.L.P. (formerly Lee, Burns, Cossell & Kuehn, L.L.P.). We therefore affirm in part and reverse in part.

# I

On August 8, 2001, Claiborne filed an action in the Marion County (Indiana) Circuit Court against several defendants, raising claims under both the federal Fair Housing Act Amendments of 1988 (FHA), 42 U.S.C. §§ 3601 *et seq.*, and the Indiana Fair Housing Act, Ind. Code §§ 22-9.5-1-1 *et seq.* Each defendant, she asserted, bore some responsibility for alleged sexual harassment she had suffered as a tenant of the Drake Terrace Apartments at the hands of the apartment manager, Roy Wisdom, and for her subsequent eviction when she rejected Wisdom's advances. In addition to naming Wisdom and Drake Terrace as defendants, she also named George Mitchell Mott, the property manager of the apartment complex, and Puritan Home Funding, L.P., the company that owned the complex and that employed Wisdom. In the complaint, Claiborne not only alleged that she had been sexually harassed, but she also claimed that other women had suffered from similar treatment and had also been forced to vacate their apartments. The complaint represented that Claiborne and her lawyer, Boyd, had interviewed corroborating witnesses prior to filing suit. Finally, she alleged that Wisdom had engaged

in the same sort of conduct at other apartment complexes before Puritan hired him, and that Puritan and perhaps the other defendants were thus negligent in hiring him.

Relying on the fact that Claiborne's claim rested on the FHA in part, the defendants removed the case to the district court. On March 20, 2002, after some of the witnesses had been deposed, Claiborne moved to dismiss the action voluntarily. Her stated reason for the motion was that "[t]o the complete surprise and shock of Plaintiff and her counsel, the witnesses denied making the above-referenced statements and they accused Plaintiff and her counsel of fabricating the claims." In response to the motion, the court entered a formal "Judgment in a Civil Case" that recited that "IT IS ORDERED AND ADJUDGED, pursuant to the order of the Court, that the complaint and all claims therein, including Plaintiff's claims under the Federal and Indiana Fair Housing Acts, are dismissed with prejudice."

In the same order, the court invited the defendants to file a motion for costs and sanctions, including attorneys' fees, within 14 days of the date of the judgment. They accepted the invitation, filing the appropriate motion on May 8, 2002. Claiborne filed her response on May 24, 2002, within the time permitted. Apparently unsatisfied with that filing, however, she sought permission five days later to file a corrected response, which included new arguments and affidavits. On July 22, the court denied her motion. At that point, matters moved slowly. On December 20, 2002, the court held a hearing on the defendants' motion. On February 11, 2003, the court found Claiborne and Boyd liable for attorneys' fees and costs, although it imposed only $1 in liability against Claiborne and the remainder, amounting to $107,845.77, against Boyd. Later, in an order entered on July 2, 2003, the court held that the Lee law firm was jointly and severally liable with Boyd for the $107,845.77 due to the defendants. Finally, on December 17, 2003, the

court held an evidentiary hearing on the firm's motion to set aside the July 2 order with regard to the firm and denied the motion in an order entered on January 8, 2004. Claiborne, Boyd, and the Lee firm have appealed.

## II

The theories on which the district court relied in its decision to impose sanctions on these three parties varied. In the interest of clarity, we consider each defendant's liability separately, despite a certain amount of legal and factual overlap. We begin with Claiborne, the original plaintiff, and then consider Boyd's and the Lee firm's arguments.

## A

Although Claiborne has only $1 at stake, this is nonetheless a concrete enough burden from the decision to permit her to pursue this appeal. (The court's order indicates that the defendants requested that Claiborne's sanction be limited to $1 at oral argument, apparently because of her inability to pay any more; the order does not indicate anything about her relative responsibility for the problems with the case.) The court relied on the legal authority provided by the FHA itself, 42 U.S.C. § 3613(c)(2), for its order. That statute reads as follows:

> In a civil action under subsection (a) of this section, a court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs.

The statute does not specify the persons or entities against whom such an order may be imposed, but Claiborne is not arguing that a party to the case (as opposed to her lawyer) is somehow excluded. Instead, she argues both that the defendants were not "prevailing parties" for purposes of this

statute, because their victory came about because of her voluntary dismissal, and that the statute does not permit an award against a losing plaintiff under the circumstances of her case.

*Prevailing Party.* The Supreme Court has held that the fee-shifting provisions of the FHA found in § 3613(c)(2) are available only to a party that has secured a judgment on the merits or a court-ordered consent decree. See *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603-04 (2001). This judgment must result in a "material alteration of the legal relationship of the parties." *Id.* at 604 (citing *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989)). A voluntary change in conduct, taken outside of the litigation, lacks the necessary judicial *imprimatur. Id.* at 605.

In arguing that a voluntary dismissal fails the *Buckhannon* test, Claiborne is looking at the wrong end of the telescope. The critical fact is not what prompted the district court to act; it is instead what the district court decided to do. Here, the language of the district court's judgment makes it clear that a decision on the merits has been rendered: Claiborne's claims were dismissed *with prejudice.* This order effects a material alteration of her legal relationship with the other parties, because it terminates any claims she may have had against them arising out of this set of operative facts. If she were to try to bring the same claim in the future, the defendants would be entitled to rely on a claim preclusion or *res judicata* defense. The two cases on which Claiborne relies, *Hewitt v. Helms*, 482 U.S. 755 (1987), and *Hanrahan v. Hampton*, 446 U.S. 754 (1980), are not to the contrary. *Hewitt* holds only that an interlocutory ruling that reverses a dismissal for failure to state a claim "is not the stuff of which legal victories are made." *Id.* at 760. There is nothing interlocutory about the district court's judgment here, which, we should note, Claiborne is not

contesting on appeal; it is a final judgment in the defen-
dants' favor. *Hanrahan* also points out that the reversal of
a directed verdict for a defendant does not make a plaintiff
a prevailing party, for the obvious reason that the defen-
dant may ultimately win after further proceedings. *Id.* at
758-59.

*Standard for § 3613(c)(2) Award.* Claiborne also argues
that the district court erred when it characterized her case
as so frivolous that it warranted an award of fees against a
plaintiff. The district court relied on *Hensley v. Eckerhart*,
461 U.S. 424 (1983), which addressed the standard for fee
awards under 42 U.S.C. § 1988, and *LeBlanc-Sternberg
v. Fletcher*, 143 F.3d 748 (2d Cir. 1998), which applied the
*Hensley* approach to § 3613(c)(2). In *Hensley*, the
Supreme Court said that "[a] prevailing party defendant
may recover an attorney's fee only where the suit was vexa-
tious, frivolous, or brought to harass or embarrass the
defendant." 461 U.S. at 429 n.2. Claiborne accepts this as
the correct legal standard for § 3613(c)(2). See also *Bryant
Woods Inn, Inc. v. Howard County*, 124 F.3d 597 (4th Cir.
1997) and *Foster v. Barilow*, 6 F.3d 405 (6th Cir. 1993). She
argues only that her "seven-month old case was not frivo-
lous, ungrounded, or fraudulent."

The district court, however, found otherwise, and (as
Claiborne correctly concedes) our review is for abuse of dis-
cretion. The court found that the record before it demon-
strated that the suit lacked the required factual or legal
basis at the time it was filed. We note, in this connection,
that at the time of filing in the state court, the governing
legal standard came from Ind. Trial P. Rule 11, which (like
FED. R. CIV. P. 11) requires every pleading or motion filed
by a represented party to be signed by the attorney, and
which states that "[t]he signature of an attorney constitutes
a certificate by him that he has read the pleadings; that to
the best of his knowledge, information, and belief, there is
good ground to support it; and that it is not interposed for

delay." Although the case was later removed to federal court and thus was later governed by the federal procedural rules, we see nothing in the Indiana rules that would have affected the district court's decision, nor has Claiborne suggested that there is any material difference for this purpose between the state and federal standards.

In finding Claiborne's suit to be baseless, the court explained its conclusion as follows:

> [T]he punitive damages claim against Mott, the Drake Apartments and Puritan Home was without a factual basis as Plaintiff admitted that these Defendants did not intend to harm her in any fashion. Moreover, none of the witnesses Plaintiff called to testify on her behalf corroborated her claim that she was sexually harassed by Wisdom, that other witnesses were sexually harassed by Wisdom, or that Defendants intimidated witnesses. Finally, Plaintiff's Indiana Fair Housing Act claim was time-barred.

Our own review of the record shows that there was ample support for the court's first two findings—certainly enough to survive abuse-of-discretion review. With respect to the timeliness of the Indiana Fair Housing Act claim, the same underlying factual problems doom the case. The district court thought that the claim was time-barred under the Indiana law's one-year statute of limitations. From this vantage point, timeliness is more difficult for us to assess. Claiborne claims that she actually vacated the apartment on September 6, 2000, and that she filed a timely claim on August 8, 2001; defendants state that she was evicted on August 7, 2000, and thus that the claim was filed a day late. They also argue that the limitations period for the state claim runs from the date of the notice of eviction, which was July 31, 2000, not from the date of her actual departure. Even if the suit were timely, however, it suffered from precisely the same flaws as the federal claim, and thus

could not save Claiborne from liability for attorneys' fees. (We assume, generously to Claiborne, that a frivolous federal claim to which a non-frivolous state claim was supplemental would not qualify for prevailing defendants' fees under § 3613(c)(2), though that is not at all clear, and we make no such holding.)

*Additional Arguments.* Claiborne also argues that the district court erred when it imposed certain restrictions on the hearing it held on the defendants' motion for attorneys' fees, costs, and sanctions, and that the court abused its discretion when it refused to permit Claiborne to file the tardy amended response to the defendants' motion. These kinds of decisions, however, are properly seen as case management matters that fall within the district court's discretion, and we see no abuse of discretion here. We therefore affirm the order of sanctions against Claiborne.

## B

We now turn to the much more substantial sanction imposed against attorney Boyd—all but $1 of the defendants' proven fees, or $107,845.77. For this part of its order, the court relied on 28 U.S.C. § 1927, which reads as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Although the court did not refer to FED. R. CIV. P. 11 or to Ind. Trial P. Rule 11, it is worth noting that both the federal rule and the Indiana rule empower the court to impose appropriate sanctions against the attorney, and those sanctions may include appropriate attorneys' fees incurred

as a direct result of the violation. FED. R. CIV. P. 11(c); *Srivastava v. Indianapolis Hebrew Congregation, Inc.*, 779 N.E.2d 52 (Ind. Ct. App. 2002).

Boyd argues that her conduct in the litigation fell far short of that required to impose sanctions under § 1927. Only subjective bad faith will suffice, in her view, and she asserts that this record cannot support such a finding.

The question of how to interpret § 1927 is one of law, and so we apply *de novo* review to this part of the case. In *Kotsilieris v. Chalmers*, 966 F.2d 1181 (7th Cir. 1992), we explained that "the bad faith standard [of § 1927] has an objective component, and extremely negligent conduct, like reckless and indifferent conduct, satisfies this standard." *Id.* at 1185. The opinion continued with more concrete examples: the "cases in which this court has upheld section 1927 sanctions have involved situations in which counsel acted recklessly, counsel raised baseless claims despite notice of the frivolous nature of these claims, or counsel otherwise showed indifference to statutes, rules, or court orders." *Id.* at 1184-85. In earlier decisions as well, the key point was the objective unreasonableness of the attorney's actions, not the absence of bad faith or evil intent. See *Walter v. Fiorenzo*, 840 F.2d 427, 433 (7th Cir. 1988) (citing *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 227 (7th Cir. 1984)). The absence of subjective bad faith is therefore not enough to avoid a sanction under § 1927, if the attorney's actions otherwise meet the standard of objective unreasonableness we have described.

The only remaining question is whether the district court abused its discretion in finding that Boyd's actions here were objectively unreasonable. Here is what the court had to say about her conduct:

> To put it mildly, Ms. Boyd did not exhibit the diligence, professionalism, or competency that one would expect from an officer of the court. She failed to answer discov-

ery requests propounded by Defendants, and failed to disclose the full names and addresses of the witnesses she expected to call for trial. . . . Had Ms. Boyd done her job in an objectively reasonable manner, she would have realized that her client did not have a case months before March 20, 2002 [the date of the motion for voluntary dismissal].

That much alone might not be enough to support an award of the full amount of the defendants' attorneys' fees under § 1927, because the statute speaks of the "excess" costs and fees that were incurred because of the lawyer's conduct, and this excerpt merely indicates that Boyd should have realized that the case had problems at some undefined time before March 20, 2002. But that is not all that the court wrote. In the sanctions order docketed on February 11, 2003, it made the following findings:

- Boyd pursued a number of claims without any factual basis (¶ 12);

- Three of the four major claims that Boyd presented proved to be "entirely without a factual basis" (¶ 13);

- Boyd engaged in evasive and dilatory tactics, such as filing an incomplete disclosure of witnesses, failing to file a response to defendants' interrogatories and production requests, and failing to respond to defendants' motion for summary judgment (¶ 14); and

- Boyd "never made a reasonable inquiry before presenting serious allegations to this court." (¶ 15)

Taken together, these findings go to the heart of the case. Boyd's only response is that the defendants shared some (or much) of the blame for the way that the case proceeded. First, that argument does not explain why such an ill-founded case started in the first place. Second, our own review of the record does not convince us that the district

court abused its discretion in weighing the relative responsibility for plaintiffs and defendants in the way that it did.

We conclude, therefore, that the court applied the correct legal standard under § 1927 and that it did not abuse its discretion when it imposed the full amount of the defendants' attorneys' fees on Boyd (save the $1 that Claiborne was to pay). Given this outcome, we need not reach the question whether Rule 11, or a combination of Indiana's Rule 11 and the federal rule, would independently support the sanction.

## C

Last, we turn to the court's order making Boyd's law firm, Lee, Cossell, Kuehn & Love, L.L.P., jointly and severally liable for the sanctions imposed on Boyd. Initially, the court decided that § 1927 imposes only individual liability, and thus that the Lee firm could not be liable in any derivative or *respondeat superior* capacity. Order of Feb. 11, 2003. The defendants moved to reconsider that ruling, however, and in a later order docketed on July 2, 2003, the court reversed itself and found, largely on the basis of a number of district court decisions, that § 1927 indeed does permit sanctions against law firms. The defendants argue on appeal that the latter decision was correct, both because the language of § 1927 permits sanctions against "[a]ny attorney or other person admitted to conduct cases," and because, once again, most district courts addressing this issue have held or assumed that sanctions may be imposed against a law firm. They also argue that the firm has waived this issue, but we are satisfied that it said enough in the December 20, 2002, hearing to preserve the point for appeal.

This court has never had occasion squarely to address this question. This is once again a question of law, which we review *de novo*. Our sister circuits have come to differing

conclusions without focusing on the precise legal question at stake. In *Arvigan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991), the court declared that "a court may assess attorney's fees against litigants, counsel, and law firms who willfully abuse judicial process by conduct tantamount to bad faith," but it offered no reason for including law firms in that list. Indeed, the case that the court cited in support of this proposition, *Roadway Express Inc. v. Piper*, 447 U.S. 752 (1980), had nothing to say about law firm liability under § 1927. Two other circuits have imposed sanctions on law firms but also without any discussion of this question. *LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899 (D.C. 1998); *Baker Indus., Inc. v. Cerberus Ltd.*, 764 F.2d 204 (3d Cir. 1985). In contrast, the Fourth Circuit has expressed doubt that a law firm may be sanctioned under § 1927. It did not definitively resolve the question, however, because it reversed an award of attorneys' fees on the ground that the district court's order did not specify any sanctionable conduct on the part of the firm's attorneys. *Blue v. U.S. Dep't of the Army*, 914 F.2d 525, 549 (4th Cir. 1990). In our view, these decisions are inconclusive. We therefore consider for ourselves whether a law firm is subject to sanctions under § 1927.

The statute itself refers to "[a]ny attorney or other person admitted to conduct cases in any court of the United States." No one argues that the Lee firm as a whole is actually "admitted to conduct cases" before any court. Individual lawyers, not firms, are admitted to practice before both the state courts and the federal courts. See, *e.g.*, Ind. Rules of Court 3.1 (governing the admission of *attorneys*); FED. R. APP. P. 46(a) (same); S.D. Ind. Local R. 83.5(b) (same). The fact that § 1927 refers to "other person[s]" admitted to conduct cases is of no help to the defendants. This language reflects the fact that in limited circumstances non-attorneys may appear in judicial proceedings, such as in patent proceedings or where law students receive special

permission to conduct cases before they are admitted to the bar. See 37 C.F.R. § 10.14 (allowing certain non-attorneys to practice before the United States Patent and Trademark Office); Ind. Rules of Court 2.1 (allowing supervised law students to act as attorneys); N.D. Ind. Local R. 83.9 (same). It is too much of a stretch to say that a law firm could also be characterized as a such a person.

Our conclusion has the virtue of being consistent with the rationale the Supreme Court used in *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120 (1989), when it considered the question whether sanctions were possible against a law firm under an earlier version of FED. R. CIV. P. 11. (The rule was amended as of December 1, 1993, to ensure that law firms could be subject to sanctions under its authority.) In *Pavelic & LeFlore*, however, the Court had to construe language that permitted sanctions only against "the person who signed" the offending document. 493 U.S. at 121. The district court, affirmed by the court of appeals, had found that this language permitted it to impose sanctions not only against the lawyer who signed the papers, but also against his law firm. The Supreme Court reversed, finding that in context the phrase "the person who signed" could only mean the individual signer, not his partnership, either in addition to him or in the alternative. The language of § 1927 raises exactly the same problem as the earlier version of Rule 11. Even if *Pavelic & LeFlore* does not strictly dictate the outcome here, it points strongly in the direction we have taken.

This does not mean that courts are powerless to impose sanctions on law firms that bear some responsibility for an individual attorney's conduct. First, it still may be possible as a matter of Indiana common law to hold the firm vicariously liable for the injuries inflicted by the individual attorney's conduct. Indiana, like most states, imposes vicarious liability on employers for the acts of employees taken within the scope of their employment. See, *e.g.*, *Stropes by*

*Taylor v. Heritage House Childrens Center of Shelbyville, Inc.*, 547 N.E.2d 244, 247 (Ind. 1990). The only question we have been considering is the firm's direct liability for the sanctions; we have no comment here on any possible vicarious liability if Boyd fails to satisfy the judgment. Second, Rule 11 now expressly permits sanctions against "the attorneys, law firms, or parties" that have violated the rule. On top of all that, the court retains inherent power to impose sanctions when the situation is grave enough to call for them and the misconduct has somehow slipped between the cracks of the statutes and rules covering the usual situations. *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). Interestingly, the defendants' brief appears to eschew reliance on Rule 11 as an alternate ground for supporting the district court's order; it argues instead that "§ 1927 and Rule 11 were enacted for different purposes." It appears also that the district court did not direct the parties to brief the question of Rule 11 sanctions, and thus that the Lee firm never had an opportunity to defend itself against that theory of liability. Finally, the defendants never mention the court's inherent power.

In some ways, this is a troubling outcome. It appears from the record that there was a close connection between Boyd's actions and those of her firm. Beyond the common fact that every paper filed in the case bore the firm's name as well as hers, it seems that the firm was on notice of the fact that her litigation practice was questionable. In a previous case before the same district court, another judge had specifically directed Nathaniel Lee, the firm's senior partner, to supervise Boyd in all employment cases pending before the Southern District of Indiana because of her substandard performance in those cases. Granted, Claiborne was not bringing an employment discrimination case, but the earlier order should have been a general alert to the responsible partners in the firm to ensure that Boyd's conduct met all relevant professional standards.

We regard the matter as sufficiently serious that in two separate orders issued today, we direct Elaine P. Boyd and Nathaniel Lee to show cause why we should not discipline them. We recommend that the district court do likewise. We also instruct the Clerk of this Court to send a copy of this opinion to the Indiana Supreme Court Disciplinary Commission for whatever actions that body thinks appropriate. We conclude here only that § 1927 does not provide a legal basis for an order of fees against an entity like a law firm that is not itself "admitted to practice" before the tribunal.

### III

For these reasons, we AFFIRM the order of sanctions imposed against plaintiff Claiborne and attorney Boyd; we REVERSE the order of sanctions against the law firm of Lee, Cossell, Kuehn & Love, L.L.P. Costs of appeal are to be taxed against Claiborne and Boyd, jointly and severally. SEE FED. R. APP. P. 39(a).

A true Copy:

      Teste:

                    _____
                    *Clerk of the United States Court of*
                    *Appeals for the Seventh Circuit*